[No. 25612.   Department One.   November 20, 1935.]

THE STATE OF WASHINGTON, *on the Relation of Oregon-Washington Water Service Company, Appellant,* v. THE DEPARTMENT OF PUBLIC WORKS *et al., Respondents.*[1]

[1]Reported in 51 P. (2d) 610.

*Todd, Holman & Sprague,* for appellant.

*The Attorney General, Geo. G. Hannan,* and *Ferd J. Schaaf, Assistants,* for respondents.

Tolman, J.—In April, 1933, the department of public works, of its own motion, filed a complaint against the Oregon-Washington Water Service Company, a corporation, with reference to its operations at Vancouver, Washington, charging that its rates, charges, rules and regulations were unjust and unreasonable, and further that its service, instrumentalities and facilities were inadequate and insufficient.

Pending the hearing, which began on November 24, 1933, the department, on October 30, 1933, under a five days notice, took the deposition of F. L. Kurzie, who had been in its employ and who was about to depart from the state of Washington. Mr. Kurzie, it appears, was an expert accountant whose work entered very largely into the report of the chief engineer of the department, which report was the basis of the department's case and is the foundation upon which its final order rests.

Beginning November 24, 1933, hearings were had before the supervisor, evidence was received, and, in June, 1934, the department entered its findings of fact and its opinion and order in the cause, which, briefly summarized, in effect held that the fair value of the fixed operating property of the service company at Vancouver was $350,000; that a proper allowance for cash working capital, material and supplies was $9,360; that the future annual earnings would, under existing rates, be $96,000; that annual operating expenses and other deductible items would amount

to $61,843, and the resulting net income would be $34,157, which would give a return of 9.5 per cent on the capital employed. The department held that 6.75 per cent was a reasonable rate of return, and that the service company's rates should be reduced so as to eliminate $9,900 from its annual gross revenue; and rates were fixed accordingly.

The service company obtained a writ of review from the superior court of Thurston county. The matter was there heard, resulting in a judgment affirming the order of the department. The service company has appealed to this court and will hereinafter be referred to as the appellant.

By its assignments of error, the appellant charges arbitrary, unreasonable and unlawful actions on the part of the department in the following particulars: (1) In permitting the witness Kurzie to depart from the state without affording the appellant a reasonable opportunity to cross-examine him; (2) in fixing the value of appellant's operating property at Vancouver, Washington; (3) in fixing the allowance for material, supplies and cash working capital; (4) in finding that appellant's annual earning capacity under existing rates was $96,000; (5) in its finding of the amount deductible therefrom; (6) in fixing the rate of return at 6.75 per cent; (7) in finding existing rates to be unreasonable and in the rates which it fixed to be charged in the future; and, finally:

"Said department did not conduct a fair and impartial investigation of said property and did not conduct said hearing in a fair and impartial manner, and was biased and prejudiced against the appellant and did not in good faith attempt to determine the fair value of said Vancouver water system or a fair rate of return on said system."

In the interest of brevity, we will discuss first the question of valuation.

■ The fair value of the operating property of a public utility for rate-making purposes is to be arrived at by the proper consideration and weighing of many things, such as the cost of construction, reproduction cost, reproduction cost depreciated, and any and all other elements of value which may enter into the particular case. Perhaps no one element is ordinarily conclusive, and in this particular case, we are convinced that every element giving, or which might give, value to this particular plant should have been weighed and considered by the department.

This particular system has been in operation in some form since 1868, and has been operated by various owners. In 1921, the department conducted an appraisal and rate-making investigation of this system, from which, in January, 1922, it found the book cost of the property as of June 30, 1921, to be $542,158. The cost of construction, as of the same date, was fixed at $516,670, and the cost of reproduction at that time was fixed at $1,115,716. From all of which the department then concluded that the fair value of the property for rate-making purposes was, on June 30, 1921, $520,000. The appellant's evidence shows that, since that time, the cost of additions made, after deducting retirements, amounts to $248,630.

The appellant purchased the system in 1927, together with a like system in the state of Oregon, paying for both the lump sum of $918,000. Allocating the cost of the two properties on the basis of net earnings for the year preceding the purchase, the department seems thus to have arrived at the cost of the Vancouver system to the appellant as being $621,159. Since that purchase and up to July, 1933, the appellant has expended for additions and betterments, less retirements, $186,268.

None of these facts is controverted or directly dis-

puted. It does appear that the books kept by the appellant's predecessor in ownership prior to 1911 are incomplete and those records do not show the total construction cost of the system, and therefore the actual cost of construction cannot be exactly determined from book figures alone. The department expressly found that, due to the inadequacy of the records, etc., the book cost shown by the appellant's records is of little, if any, assistance in fixing a fair value. Having so disposed of the records of cost, the department proceeded to ignore all such evidence.

The department found:

"The board is of the opinion and finds that the department engineers made special efforts to obtain reliable data from all available sources, that they have been impartial, just and fair in their determination, and that the amount arrived at as the estimated cost of construction is reasonable and correctly reflects such costs.

"The board is of the further opinion and finds that the estimated cost of construction of the Vancouver water system properties of the utility as of June 30, 1933, was the sum of $565,564."

This finding was based directly upon the estimate of the department's engineers, plus a small addition which had been omitted from the report. This finding does not take into account certain corrections and changes made by the engineers at the time of the hearing increasing certain construction costs; but as these increases were comparatively small in amount, we disregard them for present purposes. The finding of the cost of construction does not expressly impeach the finding made by the department in 1922 that the then cost of construction was $516,670; but when the appellant's evidence of net additions since made is considered, it becomes certain that this finding was either very much too low or that the previous

finding of the department was very much too high. We do not pursue this subject, because the department, apparently, though finding the cost of construction, gave no weight to that finding and, disregarding it, proceeded to find the cost of reproduction new less accrued depreciation. The value thus fixed was $333,300, and with that as a basis, the department raised the fair value of the plant for rate-making purposes to an even $350,000. If this raise of $16,700 was meant to cover going concern value, certainly it was a small allowance for so valuable an asset. Without reference to that point, however, we think the department erred in its valuation.

The department seems to have given no weight to any evidence presented by the appellant on the subject of cost of reproduction, but appears to have accepted the estimates of its own engineers, based upon labor costs existing in the depth of the financial depression, or even lower. The department based its findings on such labor costs plus costs of material, without considering a contractor's expenses and profits if the work were done by contract, or a sufficient overhead if the work were done by day labor under the direction of the owner. No allowance was made for ground improvements, and the allowance of but two hundred dollars to cover the reproduction of water rights, consisting of land containing springs, is manifestly out of reason. The value of water rights necessary to the service must be included in the rate base. *San Joaquin & Kings River Canal & Irr. Co. v. Stanislaus County*, 233 U. S. 454, 34 S. Ct. 652.

Appellant's engineers, in part, based reconstruction costs on the average of a ten year period preceding the hearing. Perhaps this was too prolonged a period. An average of costs over a five year period, taking in about equally good times and bad, would

seem to be a fairer method than the one adopted, and more likely to approximate the truth.

The fair value of the property, which is and must be the basis for rate-making, is not necessarily synonymous with reconstruction cost depreciated, especially so where, as here, the reconstruction cost is based upon abnormally low prices. To base rates on such reconstruction cost is to deny to appellant all of the benefits of returning prosperity, which is now generally believed to be at hand. *Los Angeles Gas & Electric Corp. v. Railroad Commission,* 289 U. S. 287, 53 S. Ct. 637.

A conscientious but burdensome study of a long record convinces us that the department abused its discretion in fixing the valuation of appellant's operating property.

■ The report of the chief engineer of the department consisted of more than one hundred fifty pages, much of it closely tabulated matter, and something like forty pages of it was based upon the work done by the witness Kurzie. This report was not made available to the appellant until the time of the taking of the Kurzie deposition. The direct examination of Mr. Kurzie was confined chiefly to the identification by him of his work as covered in the report. Counsel for the appellant was not prepared and could not have been prepared to cross-examine and intelligently go into the work done by Mr. Kurzie and, because of the situation, then made a request that the witness be required to remain at hand until the report could be examined. This request was denied, and the witness was excused and departed from the state.

It developed during the hearing later held that certain figures used by Mr. Kurzie could not be explained by any other representative of the department. No other accountant for the department was

called as a witness. Mr. Kurzie alone went to the main office of the appellant company and examined its books, and it now seems reasonably apparent that, had a proper opportunity been afforded to cross-examine this important witness, the department might have been convinced that the appellant's cost records were of value to it in reaching its conclusions.

The allowances made for working capital, material and supplies are severely questioned. The amount allowed for capital invested in material and supplies was based upon an inventory taken by an engineer for the department at a time when the stock was unusually low. The average value of material and supplies carried during the five-year period was shown to be $12,385. The department actually allowed $6,700. Without detailing the evidence bearing upon the question, we are now convinced that an allowance of less than $9,000 must be held to be arbitrary and unreasonable.

The department allowed $2,660 as cash working capital. Again, without setting forth the evidence, the record convinces us that anything less than $7,000 would be unreasonable.

The next error assigned relates to the finding as to the amount of future operating revenues. As the record stands and as general conditions were when the record was made up, it is a little difficult to justify the optimism of the department in this respect. However, general conditions have greatly improved since the hearing, and we are not now convinced that the department acted arbitrarily in this matter.

It is earnestly urged that the department seriously erred in its finding as to the future operating expenses and other proper deductions from gross revenue by the disallowance of increased labor costs, the disallowance of the cost for services of tax, sanitary

and other experts, the failure to make sufficient allowance for taxes, the elimination of certain items of general expense, and in refusing to allow all of the expense actually incurred by the appellant in this proceeding. As to the item last mentioned, we are not disposed to substitute our judgment for that of the department with its extended experience in such matters. The items of labor costs and taxes should be re-examined by the department. As to all other items, we are not satisfied that we would be justified in interfering.

The department found that a reasonable rate of return for the ensuing period of two or three years is 6.75 per cent per annum. We find nothing indicating that this was fixed arbitrarily.

Convinced as we are that the department acted arbitrarily in fixing the value and in some other minor matters, we doubt if we would be justified in holding at this time that the record warrants us in finding that no reduction or adjustment in rates should be made. An expensive investigation has been had, and the facts as seen from both sides are now in the record. That record should therefore again be considered by the department in the light of what has here been said.

Reversed, with instructions to remand the cause to the department for further proceedings.

MAIN, STEINERT, GERAGHTY, and MITCHELL, JJ., concur.